RECEIVED
IN MONROE, LA

JUN 1 7 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

**SUFERNIA MONTGOMERY**

**VERSUS**

**SEARS ROEBUCK & CO., ET AL.**

**CIVIL ACTION NO. 09-0584**

**JUDGE ROBERT G. JAMES**

**MAG. JUDGE KAREN L. HAYES**

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 21] filed by

Defendants Sears Roebuck & Co. ("Sears") and Anthony Gewin ("Gewin") against Plaintiff

Sufernia Montgomery ("Montgomery"). For the following reasons, the Motion for Summary

Judgment is GRANTED. However, Montgomery is granted leave to amend her Complaint to

include a retaliation claim, which remains pending for trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Montgomery, a black female, was employed with Sears in Monroe, Louisiana, from July

22, 1975, to December 1, 2009, when she retired. [Doc. No. 21-3, pp. 10-11]. From September

1, 2006, through August 1, 2008, Gewin, a white male, was the Store Coach (i.e., Store Manager)

at the Sears in Monroe. [Doc. No. 21-3, p. 12].

When Gewin became Store Coach, Montgomery was a Receiving Associate in the

Receiving Department. [Doc. No. 21-3, pp. 14-15]. Shortly after Gewin began, he promoted

Billy Clem ("Clem"), Montgomery's supervisor, from the Receiving Lead position to Operations

Coach. [Doc. No. 21-3, pp. 16-17]. On February 25, 2007, Gewin and Clem promoted

Montgomery to the Receiving Lead position. *Id.* In connection with this promotion,

Montgomery's pay rose from $12.26 per hour to $13.00 per hour. *Id.*

In the Receiving Lead position, Montgomery was responsible for supervising and scheduling Receiving and Return-to-Vendor (RTV) Associates, and ensuring that these departments ran smoothly. [Doc. No. 21-7]. The Receiving Lead at Sears is also responsible for merchandise pick-up, unloading merchandise from delivery trucks, merchandise staging, outbound shipments, and daily backroom activities. *Id.* As Receiving Lead, Montgomery reported directly to the Operations Coach. *Id.*

Clem was Operations Coach through July 2007. [Doc. No. 21-4, p. 34]. In August 2007, Clem left, and Mark Blann ("Blann"), who is white, became Operations Coach. [Doc. No. 21-4, p. 35]. The Operations Coach reports to the Store Coach (Gewin), and the Store Coach reports to the District Coach. [Doc. No. 21-8]. During the relevant time period, the District Coach for Monroe was Karen Wheat ("Wheat"). [Doc. No. 21-3, p. 24].

The first reported problems between Montgomery and Gewin occurred in November of 2007. [Doc. No. 21-3, pp. 30-31]. On November 6, 2007, Montgomery called 88SEARS, a hotline for Sears employees, to complain about Gewin's treatment of her. [Doc. No. 21-3, p. 31]. Montgomery alleges she had never been given negative evaluations of her job performance before, but, beginning in November 2007, she received multiple written disciplinary actions and was encouraged to relinquish her supervisory role.

On November 21, 2007, Gewin issued Montgomery a written Policy Violation for insubordination that allegedly took place during a confrontation they had the previous day about her job performance. [Doc. No. 21-9]. Montgomery disputes that she said the statements attributed to her in this Policy Violation. [Doc. No. 21-3, p. 53].

From January 10, 2008, to February 10, 2008, Montgomery took vacation and personal leave, informing only the Human Resources Manager and 88SEARS. [Doc. No. 21-3, pp. 60-68]. On January 24, 2008, Gewin sent Montgomery a letter threatening to terminate her for job abandonment if she did not file a leave request form. [Doc. No. 21-15]. Montgomery filed the form and was allowed to return to work. *Id.*

On February 19, 2008, Montgomery and five other employees met with Wheat to discuss various problems with Gewin. [Doc. No. 21-3, p. 69; Doc. No. 22].

In mid-April, Gewin approached Montgomery, explained that he did not think she was doing her job as Receiving Lead properly, and offered her a non-leadership position at the same rate of pay. [Doc. No. 21-3, pp. 104-06]. Montgomery declined the position. [Doc. No. 21-3, pp. 106-07].

On April 21, 2008, Blann placed Montgomery on a written Performance Plan for Improvement (PPI). [Doc. No. 21-10]. The PPI gives performance-related reasons for its implementation, but Montgomery disputes all of them. [Doc. No. 21-3, p. 109].

On April 30, 2008, Montgomery filed a charge of discrimination against Sears with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and harassment and retaliation as a result of her complaints to Wheat at the February 19, 2008 meeting. [Doc. No. 25-2, p. 78].

On May 19, 2008, Montgomery called 88SEARS to report that she felt Gewin was retaliating against her because of her EEOC claim because he threatened to refuse to allow her to go on vacation (although he did allow her to go), reduced her work hours, and had her records moved to another location. [Doc. No. 25-2, Montgomery dep., pp. 122-27; Doc. No. 21-3, pp.

3

21-3, p. 130-33].

On June 4, 2008, Blann issued Montgomery a PPI Written Follow-Up stating that she had not corrected the problems noted in the original PPI. [Doc. No. 23-1]. Montgomery disputes the accuracy of the contents of this document. [Doc. No. 21-3, pp. 134-36].

On July 31, Montgomery was issued an unsigned PPI Final Written Follow-Up, which listed further performance failures and noted that there was still no improvement on the problems addressed in the original PPI. [Doc. No. 21-12]. Montgomery disputes the accuracy of the contents of this document, as well. [Doc. No. 21-3, pp. 137-38].

Gewin left Sears in Monroe on August 1, 2008, and Blann left shortly afterward. [Doc. No. 21-3, p. 12]. At that time, Montgomery remained in the position of Receiving Lead at the same rate of pay. [Doc. No. 138-40].

Gewin was replaced by Barbara Kelly Bryant, who told Montgomery that she would disregard all of her PPIs and start afresh with her. [Doc. No. 21-3, pp. 12-13]. Montgomery does not allege actionable harassment or retaliation after Gewin and Blann's departures. [Doc. No. 21-3, p. 11]. Montgomery retired voluntarily on December 1, 2009. [Doc. No. 21-3, pp. 10-11].

On January 9, 2009, the EEOC sent Montgomery a right-to-sue letter. [Doc. No. 21-14]. On April 7, 2009, Montgomery filed a Complaint [Doc. No. 1] against Gewin, Blann,[1] and Sears alleging that, during the time Gewin was her supervisor, he and Blann engaged in discriminatory employment practices against her and created a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e, *et seq.*

---

[1] Blann was later dismissed from this suit for Montgomery's failure to effect service within 120 days. [Doc. No. 15].

4

On April 9, 2010, Gewin and Sears filed a Motion for Summary Judgment. [Doc. No. 21]. On May 4, 2010, Montgomery filed a Memorandum in Opposition to Summary Judgment. [Doc. No. 25]. On May 13, 2010, Gewin and Sears filed a Reply to Montgomery's Opposition. [Doc. No. 28].

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id.* "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

5

*Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## B.     Analysis

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This provision encompasses discriminatory behavior that creates a "hostile or abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). It is also unlawful under Title VII for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

In their Motion for Summary Judgment, Gewin and Sears argue that the Court should dismiss Montgomery's race-based harassment and discrimination claims because she has failed to establish a *prima facie* case. Gewin and Sears also argue that Gewin should be dismissed from this action because only employers, not individuals, can be held liable under Title VII. Finally Gewin and Sears argue in their Reply that Montgomery has improperly asserted retaliation and constructive discharge claims in her Opposition to Summary Judgment.

### 1.     Discrimination

"To establish a *prima facie* case of employment discrimination [Montgomery] must establish that [s]he (1) is a member of a protected class; (2) was qualified for the position; (3)

6

was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, . . . that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

The Fifth Circuit has held that an adverse employment action "includes only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Bouvier v. Northrup Gumman Ship Sys., Inc.*, 350 Fed. Appx. 917, 922 (5th Cir. 2009) (internal quotation marks omitted) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)). Where an employee resigns, she may satisfy this requirement by proving constructive discharge. *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997). Constructive discharge occurs when the employer makes the employee's working conditions "so intolerable that a reasonable employee would feel compelled to resign." *Id.* (citing *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir.1994)). This is an objective test, and courts consider a variety of factors, including demotion; reduction in salary; reduction in job responsibilities; reassignment to menial or degrading work; badgering, harassment, or humiliation by the employer calculated to encourage resignation; or offers of early retirement that would make the employee worse off. *Barrow*, 10 F.3d at 297.

In their Motion for Summary Judgment, Gewin and Sears do not dispute that Montgomery is part of a protected class or that she was qualified for the position. They argue only that Montgomery cannot establish a *prima facie* case of employment discrimination because 1) she cannot show she was subjected to an adverse employment action, and 2) she cannot show she was replaced by someone outside her protected class or that other similarly situated employees were treated more favorably.

7

The Court agrees with Gewin and Sears that Montgomery has not shown an adverse employment action taken against her. In fact, Gewin initially promoted Montgomery. Although he later offered her a demotion at the same rate of pay, she refused the demotion, and no action was taken. Even after Gewin and Montgomery began having problems, Gewin and Blann's actions against her were the issuance of a written Policy Violation, a PPI, and two PPI Written Follow-Ups. None of these actions constitute an adverse employment action. At the time Gewin and Blann left Monroe, Montgomery held a higher position and rate of pay than she had held when Gewin arrived.

Montgomery contends that her retirement from Sears on December 1, 2009, sixteen months after Gewin left the store, constitutes constructive discharge. Although she admits that Gewin's and Blann's alleged discrimination and harassment ended when they left, Montgomery argues that it influenced her decision to retire earlier than she would have otherwise. Even assuming that the alleged discrimination and harassment in fact influenced Montgomery's decision to retire, these circumstances do not meet the standard for constructive discharge. At the time Montgomery retired, no reasonable person would have found her working conditions, which had returned to normal, so intolerable they would have felt compelled to resign.

The Court finds that Montgomery has presented no genuine issue of material fact regarding whether she suffered an adverse employment action, and, therefore, she has failed to present a *prima facie* case for employment discrimination under Title VII.[2] Therefore, the Court GRANTS Gewin and Sears' Motion for Summary Judgment on this claim.

---

[2] Having found Montgomery did not suffer an adverse employment action, the Court does not consider here whether she presented a genuine issue of fact regarding whether a similarly situated employee was treated more favorably.

8

## 2. Hostile Work Environment

"To establish a *prima facie* case of hostile work environment, a plaintiff must show: (1)

that [s]he belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the

harassment complained of was based on race; (4) the harassment affected a term, condition, or

privilege of employment; and (5) the defendant knew or should have known of the harassment,

yet failed to take prompt remedial action." *Watkins v. Texas Dept. of Criminal Justice*

269 Fed. Appx. 457, 463 (5th Cir. 2008). Where, as here, the harassment is allegedly committed

by a supervisor with immediate or successive authority over the victim, the plaintiff need only

satisfy the first four elements. *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 353 (5th

Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

Fifth Circuit precedent makes it clear that subjective belief of racial motivation cannot

import racial animus into an individual's conduct, and, without objective evidence, is insufficient

to create a *prima facie* claim for a hostile work environment under Title VII. *See, e.g., Lyles v.*

*Texas Alcohol Beverage Com'n*, No. 09-20714, 2010 WL 2103006, at *4 (5th Cir. May 24,

2010); *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. Appx. 104, 107 (5th Cir. 2009);

*Johnson v. TCB Const. Co., Inc.*, 334 Fed. Appx. 666, 671 (5th Cir. 2009); *Garza v. Laredo*

*Indep. Sch. Dist.*, 309 Fed. Appx. 806, 809 (5th Cir. 2009); *Baker v. FedEx Ground Package Sys.*

*Inc.*, 278 Fed. Appx. 322, 329 (5th Cir. 2008); *Watkins*, 269 Fed. Appx. at 464; *Ellis v. Principi*,

246 Fed.Appx. 867, 871 (5th Cir. 2007); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed.

Appx. 913, 917 (5th Cir. 2006).

Additionally, "[f]or harassment to be actionable, it must be sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working

9

environment. *Watkins*, 269 Fed. Appx. at 464 (internal quotation marks and citation omitted). In determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris*, 510 U.S. at 23.

In their Motion for Summary Judgment, Gewin and Sears argue that Montgomery has not established a *prima facie* case for a hostile work environment claim because 1) she has not established the alleged harassment was based on her race, and 2) she has not shown the alleged harassment was severe or pervasive.

Montgomery alleges that, during the time Gewin was her supervisor, he constantly harassed her about her job performance. She alleges Gewin had a "personal vendetta" against her and wanted to fire her, and, for this reason, he "nit-picked," worked against her, and tried to make her department "look bad" by doing things such as failing to hire enough assistants for her during the Christmas season and failing to require other employees to assist her. [Doc. No. 21-3, pp. 37, 48-49, 50-52, 73, 77-78 80-81]. Montgomery alleges that Gewin lied about her statements when he issued her a Policy Violation for insubordination and that he and Blann unfairly and untruthfully represented her job performance as unsatisfactory in her PPI and its two Written Follow-Ups. Montgomery also alleges that Gewin attempted to terminate her for job abandonment because she did not contact him or Blann when she took emergency leave in January of 2008, even though Gewin knew Montgomery had spoken with the Human Resources Manager and contacted 88SEARS. Montgomery further alleges that Gewin asked other employees to watch her without giving a reason. [Doc. No. 21-3, pp. 92-93].

10

Montgomery attempts to connect Gewin's behavior toward her to her race by alleging that she overheard Gewin tell Blann on Blann's first day that he needed to watch the Receiving Associates (who were black) because they were "lazy" and had to be made to work. [Doc. No. 21-3, pp. 42, 46-47, 74-75]. Montgomery alleges Gewin targeted her department when he watched Sears' Loss Prevention video feed and once asked a black employee to clean up after Gewin's child either spilled something or vomited in the store. [Doc. No. 21-3, p. 86-87, 92-93]. Gewin allegedly scheduled her to work every weekend, instead of rotating weekends as other employees were scheduled [Doc. No. 21-3, p. 78], and prohibited her from making her own schedule, as other Leads were allowed to do. [Doc. No. 21-3, p. 210]. Finally, Montgomery alleges that Gewin disciplined her when Blann, her white supervisor, improperly added hours to her schedule, but did not discipline Blann. [Doc. No. 25, p. 11].

Even if the Court accepts Montgomery's allegations as true, she has failed to establish racial animus. She has presented no evidence other than her own subjective belief that the actions allegedly taken against her were based on race. Montgomery has not alleged that Gewin or Blann ever used racial epithets or slurs toward her or anyone else, and nothing in the content of Gewin's statements or the written disciplinary actions suggests they were based on race. At the time Gewin and Blann worked at Sears in Monroe, its employee population was roughly 70% – 90% black. [Doc. No. 21-3, p. 30, Doc. No. 21-4, p. 27]. During the time he was there, Gewin promoted Montgomery[3] and numerous other black employees, and several of the leadership

---

[3] Gewin and Sears argue that the Court should apply the "same actor inference" found in *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) to infer that, because Gewin promoted Montgomery, discrimination was not his motive in trying to fire her or get her to step down. As legal precedent, the use of this case is doubtful. *See, e.g., Spears v. Patterson UTI Drilling Co.*, 337 Fed.Appx. 416, 420-21 (5th Cir. 2009); *Russell v. McKinney Hosp. Venture,*

11

positions in the store were held by black employees. [Doc. No. 21-3, pp. 28-30, Doc. No. 21-4, p. 26-28]. Montgomery has not alleged that Gewin did not allow the other black managers or Leads to make their own schedules, or that he did not schedule other black employees for rotating weekends off. Even if Gewin was motivated by racial animus when he allegedly watched the Receiving Department more closely on the Loss Prevention video feed and had a black employee clean up after his child, this conduct would not be severe or pervasive enough to constitute a hostile work environment.

In her Opposition to Summary Judgment, the only evidence Montgomery puts forth in response to Gewin and Sears' argument that she cannot show Gewin's treatment of her was based on her race is an incident in which she was disciplined because she went over her hours when Blann had added them to her schedule, but Blann was not. [Doc. No. 25, p. 11]. Montgomery argues that Blann, a white supervisor, was treated differently for this violation than she, a black supervisor. However, Blann was Montgomery's direct supervisor and had more responsibilities than she did. Further, the written disciplinary action to which Montgomery refers was issued the day before Gewin left Sears in Monroe, at a time when Gewin and Montgomery already had a long history of strife, and included other performance issues, as well. Montgomery and Blann were not similarly situated, therefore the fact that she was disciplined for this violation, while Blann was not, does not imply racial animus on Gewin's part.[4]

---

235 F.3d 219, 225-27 (5th Cir. 2000). However, the fact that Gewin promoted Montgomery has been considered in the Court's analysis.

[4] The same result is reached with regard to the fact that no other Leads were placed on a PPI for not holding their Associates accountable or for going over their hours, as Montgomery was, because Montgomery offers no evidence that other Leads did these things. *See Stone v. Parish of East Baton Rouge*, 329 Fed. Appx. 542, 547 (5th Cir. 2009) (In disparate treatment

The Court finds that Montgomery has presented no genuine issue of material fact regarding whether Gewin's alleged harassment of her was based on her race, and therefore she has failed to present a *prima facie* case for a hostile work environment under Title VII. Therefore, the Court GRANTS Gewin and Sears' Motion for Summary Judgment on this claim.

### 3.  Retaliation

In her Opposition to Gewin and Sears' Motion for Summary Judgment, Montgomery raises a retaliation claim under 42 U.S.C. § 2000e-(3)(a) that is not included in her Complaint.[5] The Fifth Circuit has recently stated that the Court must construe the inclusion of new theories of liability in oppositions to motions for summary judgment as a motion to amend the Complaint. *Riley v. Sch. Bd. Union Parish*, No. 09-30625, 2010 WL 2008150, at *5 (5th Cir. 2010).

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given "when justice so requires." A district court has discretion to consider numerous factors in determining whether to allow amendment, including undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment. *Clark v. Douglas*, No. 06-40364, 2008 WL 58774, at *3 (5th Cir. 2008).

In its Reply to Montgomery's Opposition to Summary Judgment, Gewin and Sears argue that the Court should not allow Montgomery to assert her retaliation claim because it is untimely, will require re-setting the trial date and other deadlines, and because the claim is futile. Gewin

---

cases, "for employees to be similarly situated those employees' circumstances, including their misconduct, must have been nearly identical." (internal citations omitted)).

[5] Montgomery also raised a constructive discharge claim for the first time in her Opposition to Summary Judgment, but this claim is futile for the reasons the Court explained in Section II.B.1, above.

13

and Sears argue that the claim is futile because Montgomery cannot establish a *prima facie* case of retaliation when she has not alleged an adverse employment action taken against her.

To establish a *prima facie* case for retaliation under Title VII, a plaintiff must establish that: "(1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). The Supreme Court has held that, in the context of retaliation claims, an "adverse employment action" is any action that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (internal quotation marks and citations omitted). The Court noted, however, that trivial harms, such as "petty slights, minor annoyances, and simple lack of good manners," do not deter reasonable victims of discrimination from complaining. *Id.* at 68. The Court further noted that "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69.

Much of the conduct Montgomery describes falls under the category of "petty slights, minor annoyances, and simple lack of good manners" which do not support a retaliation claim, such as threatening to take away vacation time and changing her schedule. However, some of Gewin's alleged conduct might well dissuade a reasonable person from pursuing an EEOC claim. Although Gewin and Montgomery had some history of confrontations and written disciplinary action prior to Montgomery's February 19, 2008 meeting with Wheat, Gewin had never placed Montgomery on a PPI until April 21, 2008. Montgomery alleges that the performance issues documented in the PPI and its June 4, 2008 and July 31, 2008 Written Follow-Ups are false or

14

unfairly blame her for poor performance that Gewin and Blann knew was caused by failures of other people or departments. If her allegations are true, such conduct would constitute adverse employment action for the purposes of a retaliation claim.

The Court finds that Montgomery may be able to establish the other elements of a *prima facie* Title VII retaliation claim, as well. Montgomery argues that the February 18, 2008 meeting in which she complained about Gewin's alleged discriminatory harassment was a protected activity, and Gewin and Sears admit this is arguable. [Doc. No. 26-1, p. 8]. With regard to the causal connection between the adverse employment action and the protected activity, Montgomery has established that Gewin knew of the February 19, 2008 meeting, and that the start of the PPI process took place soon after. *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1181 (5th Cir. 1997). Additionally, Montgomery alleges Gewin told another employee he intended to "get rid of" Montgomery and the other five employees who participated in the February 19, 2008 meeting with Wheat. [Doc. No. 25-2, Montgomery Dep., pp. 112-13].

The Court finds that amendment of Montgomery's Complaint to include a retaliation claim would not be futile. Although allowing Montgomery to amend her Complaint to assert a *prima facie* claim of retaliation will delay trial, Montgomery does not appear to be at fault for her attorneys' failure to include this claim in her original Complaint.[6] Therefore, the Court GRANTS Montgomery's implied motion to amend her Complaint. Montgomery must amend her Complaint to include a claim for retaliation within fourteen (14) days of the date of this Ruling.

---

[6] Additionally, Montgomery alleged retaliation in her EEOC claim [Doc. No. 25-2, p. 78], and the principal facts relating to this claim were alleged in the Complaint. [Doc. No. 1, ¶¶ 14, 15].

15

### 4.    Gewin's Liability

Finally, Gewin and Sears argue that the Court should grant summary judgment on

Montgomery's Title VII claims against Gewin because Gewin is not an "employer" under Title

VII.

Title VII imposes liability upon "employers" who discriminate.   42 U.S.C. § 2000e-2.

"Employer" is defined in Title VII as "a person engaged in an industry affecting commerce who

has fifteen or more employees for each working day . . . and any agent of such a person . . . ."  42

U.S.C § 2000e(b).  The Fifth Circuit has held that individuals who do not otherwise qualify as

"employers" under Title VII cannot be held liable for its violation. *Grant v. Lone Star Co.*, 21

F.3d 649, 651-53 (5th Cir. 1994).  Congress included agents in the definition of an employer

"simply to incorporate *respondeat superior* liability into Title VII." *Indest v. Freeman*

*Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 2009) (citing *Grant*, 21 F.3d at 652).

Montgomery disagrees with *Grant*, arguing that other circuits allow individual liability

under Title VII. However, this Court is bound by Fifth Circuit precedent.[7]  Montgomery further

asserts that her Complaint does not attempt to hold Gewin individually liable, but included him

in the suit to invoke the principle of *respondeat superior*.  However, a suit against an employer's

agent is actually a suit against the employer under Title VII, and "a party may not maintain a suit

against both an employer and its agent under Title VII."  *Id.*

The Court has granted summary judgment to Gewin on Montgomery's discrimination and

harassment claims, and he is also entitled to summary judgment on her retaliation claim.  Gewin

---

[7] The Fifth Circuit has affirmed the holding in *Grant* in at least one recent decision. *See*
*Evans v. Greuschow*, 314 Fed.Appx. 716, 718 (5th Cir. 2009).

16

and Sears' Motion for Summary Judgment on Montgomery's remaining claims against Gewin is GRANTED.

## III.    CONCLUSION

For the foregoing reasons, Gewin and Sears' Motion for Summary Judgment is GRANTED, and Montgomery's claims for employment discrimination and hostile work environment under Title VII are dismissed, as are Montgomery's claims against Gewin.

Montgomery's implied motion to amend her Complaint is granted, and she has fourteen (14) days from the date of this Ruling to amend her Complaint to include a claim for retaliation under Title VII against Sears.  The September 23, 2009 Scheduling Order [Doc. No. 10] is hereby VACATED, and the Clerk of Court is instructed to issue a new Scheduling Order once Montgomery timely amends her Complaint.

MONROE, LOUISIANA, this 17th day of June, 2010.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

17