UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| SUFERNIA MONTGOMERY | * | CIVIL ACTION NO. 09-0584 |
| VS. | * | JUDGE ROBERT G. JAMES |
| SEARS ROEBUCK & CO., ET AL. | * | MAG. JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is an opposed motion to dismiss (Doc. # 59) filed by defendants pursuant to F.R.C.P. Rule 12(b)(6). For reasons stated below, it is recommended that the motion to dismiss be converted to a motion for summary judgment and be **GRANTED.**

BACKGROUND AND PROCEDURAL HISTORY

This case arises out of plaintiff Sufernia Montgomery's ("Montgomery") claims against her former employer, defendant Sears, Roebuck and Co. ("Sears"), and former Sears Store Coach, defendant Anthony Gewin ("Gewin") (collectively "defendants"). The relevant facts leading up to this matter were documented in District Judge Robert G. James' ruling on defendant's earlier motion for summary judgment, dated June 17, 2010, and are adopted herein:[1]

> Montgomery, a black female, was employed with Sears in Monroe, Louisiana, from July 22, 1975 to December 1, 2009, when she retired. Doc. # 21-3, pp. 10-11. From September 1, 2006, through August 1, 2008, Gewin, a white male, was the Store Coach (*i.e.*, Store Manager) at the Sears in Monroe. Doc. # 21-3, p. 12.

---

[1] *See* doc. # 49. As explained *infra*, the ruling granted defendants' motion on Montgomery's prior claims of race discrimination and harassment; her retaliation claim is the subject of the underlying motion.

When Gewin became Store Coach, Montgomery was a Receiving Associate in the Receiving Department. Doc. # 21-3, p. 12. Shortly after Gewin began, he promoted Billy Clem ("Clem"), Montgomery's supervisor, from the Receiving Lead position to Operations Coach. Doc. # 21-3, pp. 16-17. On February 25, 2007, Gewin promoted Montgomery to the Receiving Lead position. *Id.* In connection with this promotion, Montgomery's pay rose from $12.26 per hour to $13.00 per hour. *Id.*

\*\*\*

Clem was Operations Coach through July 2007. Doc. # 21-4, p. 34. In August 2007, Clem left, and Mark Blann ("Blann"), who is white, became Operations Coach. Doc. # 21-4, p. 35. The Operations Coach reports to the Store Coach (Gewin), and the Store Coach reports to the District Coach. Doc. # 21-8. During the relevant time period, the District Coach for the Monroe Sears was Karen Wheat ("Wheat"). Doc. # 21-3, p. 24.

The first reported problems between Montgomery and Gewin occurred in November of 2007.

\*\*\*

On February 19, 2008, Montgomery and five other employees met with Wheat to discuss various problems with Gewin. Doc. # 21-3, p. 69; doc. # 22.

In mid-April, Gewin approached Montgomery, explained that he did not think she was doing her job as Receiving Lead properly, and offered her a non-leadership position at the same rate of pay. Doc. # 21-3, pp.104-06. Montgomery declined the position. Doc. No. 21-3, pp. 106-07.

On April 21, 2008, Blann placed Montgomery on a written Performance Plan for Improvement ("PPI"). Doc. # 21-10. The PPI gives performance-related reasons for its implementation, but Montgomery disputes all of them. Doc. # 21-3, p. 109.

On April 30, 2008, Montgomery filed a charge of discrimination against Sears with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and harassment and retaliation as a result of her complaints to Wheat at the February 19, 2008 meeting. Doc. # 25-2, p. 78.

On May 19, 2008, Montgomery called 88SEARS [a hotline for Sears employees] to report that she felt Gewin was retaliating against her because of her EEOC claim because he threatened to refuse to allow her to go on vacation (although he did allow her to go), reduced her work hours, and had her records moved to

another location. Doc. # 25-2, Montgomery dep., pp. 122-27; Doc. # 21-3, pp. 130-33.

On June 4, 2008, Blann issued Montgomery a PPI Written Follow-Up stating that she had not corrected the problems noted in the original PPI. Doc. # 23-1. Montgomery disputes the accuracy of the contents of this document. Doc. # 21-3, pp. 134-36.

On July 31, Montgomery was issued an unsigned PPI Final Written Follow-Up, which listed further performance failures and noted that there was still no improvement on the problems addressed in the original PPI. Doc. # 21-12. Montgomery disputes the accuracy of the contents of this document, as well. Doc. # 21-3, pp. 137-38.

Gewin left Sears in Monroe on August 1, 2008, and Blann left shortly afterward. Doc. # 21-3, p. 12. At that time, Montgomery remained in the position of Receiving Lead at the same rate of pay. Doc. # 138-40.

Gewin was replaced by Barbara Kelly Bryant, who told Montgomery that she would disregard all of her PPIs and start afresh with her. Doc. # 21-3, pp. 12-13. Montgomery does not allege actionable harassment or retaliation after Gewin and Blann's departures. Doc. # 21-3, p. 11. Montgomery retired voluntarily on December 1, 2009. Doc. # 21-3, pp. 10-11.

On January 9, 2009, the EEOC sent Montgomery a right-to-sue letter. Doc. # 21-14. On April 7, 2009, Montgomery filed a complaint against Gewin, Blann,[2] and Sears alleging that, during the time Gewin was her supervisor, he and Blann engaged in discriminatory employment practices against her and created a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e, *et seq.*

Doc. # 49, Ruling, June 17, 2010, pp. 1-4.

On April 9, 2010, defendants moved for summary judgment, arguing that Montgomery's race-based harassment and discrimination claims should be dismissed because she failed to establish a *prima facie* case. Doc. # 21. Defendants also argued that defendant Gewin should be dismissed because only employers, not individuals, can be held liable under Title VII. *Id.* On May 4, 2010, Montgomery filed a memorandum in opposition to summary judgment. Doc. # 25.

---

[2] Blann was dismissed from this suit for Montgomery's failure to effect service within 120 days. Doc. # 15.

On May 13, 2010, defendants filed a reply to Montgomery's opposition, asserting, *inter alia*, that the retaliation and constructive discharge claims in her opposition were improper and must be dismissed. Doc. # 29.

On June 17, 2010, Judge James granted defendants' motion for summary judgment as to Montgomery's discrimination and harassment claims under 42 U.S.C. §2000e, *et seq*. Doc. # 49. Concerning her retaliation claims, which were not raised in her original complaint, Judge James noted that some of defendant Gewin's alleged conduct "might well dissuade a reasonable person from pursuing an EEOC claim," although "much of the conduct [plaintiff] describes falls under the category of 'petty slights, minor annoyances, and simple lack of good manners,'" *id.* at p. 14, citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). As such, Judge James found that amendment of the complaint to include a retaliation claim would not be futile; Montgomery's implied motion to amend her complaint was granted.[3]

Judge James granted summary judgment to defendant Gewin on all claims, including the retaliation claim, pursuant to Fifth Circuit precedent holding that a suit against an employer's agent is actually a suit against the employer under Title VII, and "a party may not maintain a suit against both an employer and its agent under Title VII." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 2009) (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 651-53 (5th Cir. 1994)).

Montgomery filed her amended complaint against defendants on June 24, 2010, asserting a claim of retaliation under 42 U.S.C. §§ 2000e, *et seq*. Doc. # 52. On August 8, 2010,

---

[3] The Fifth Circuit recently stated that the Court must construe the inclusion of new theories of liability in oppositions to motions for summary judgment as a motion to amend the Complaint. *Riley v. Sch. Bd. Union Parish*, No. 09-30625, 2010 WL 2008150, at *5 (5th Cir. 2010).

4

defendants filed a motion to dismiss the amended complaint on the grounds that Montgomery failed to allege a *prima facie* case of retaliation under Title VII. Doc. # 59. Specifically, defendants contend that Montgomery cannot allege she suffered from a "materially adverse" employment action because she engaged in protected activity under Title VII. *Id.* Additionally, defendants move to dismiss defendant Gewin, who was named in the amended complaint despite Judge James' earlier dismissal of all claims against Gewin. *See* doc. # 49, p9. 16-17; doc. # 52. Finally, as Montgomery purports to re-allege her original allegations of racial discrimination and harassment, defendants move to dismiss those claims as well. Doc. # 52, ¶ 1.

## LAW AND ANALYSIS

If evidence outside the pleadings is presented to the court and used in deciding a 12(b)(6) motion, the motion is converted into a motion for summary judgment. Fed.R.Civ.P. 12(d)[4]; *Knighton v. Merscorp Inc.*, 304 Fed.Appx. 285, 287 (5th Cir. 2008) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir.1993)). In the event of conversion, Rule 12(d) requires that all parties must be given reasonable opportunity to present all material pertinent to a motion for summary judgment. *Id.* Specifically, the notice and hearing requirements of Rules 12(b) and 56(c) of the Federal Rules of Civil Procedure must be adhered to. *Mackey v. Owens*, 182 F.3d 915 (5th Cir. 1999). The Fifth Circuit has strictly interpreted Rule 56 and "has refused to dispense with the procedural safeguards of notice and a hearing." *Estate of Smith v. Tarrant County Hosp. Dist.*, 691 F.2d 207, 2008 (5th Cir. 1982). (citations omitted). "Rule 56 clearly

---

[4] Rule 12(d) provides:
If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

requires that summary judgment motions be served at least ten days prior to the hearing date and that all parties be given an opportunity to present additional material." *Id.*

There is no requirement that a party be given "express notice" by the district court that a motion to dismiss will be treated as a motion for summary judgment:

> Indeed, given [Rule 12(d)]'s express declaration that a motion to dismiss shall be treated as a motion for summary judgment where matters outside the pleadings are presented to and not excluded by the court, the simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment. *See Gay v. Wall*, 761 F.2d 175 (4th Cir.1985) ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment.").
> *Mackey v. Owens*, 182 F.3d 915 (5th Cir. 1999).

Additionally, the court always possesses the inherent authority to dismiss an action *sua sponte*, without motion by a defendant. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); see also *Spann v. Woods*, 66 F.3d 322, 1995 WL 534901, at *2 (5th Cir. 1995). The Fifth Circuit has held that a "district court may dismiss an action on its own motion under Rule 12(b)(6) 'as long as the procedure employed is fair.'" *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties) (citing *Magourik v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

Here, defendants attached three outside documents in their motion to dismiss, filed August 10, 2010. Doc. # 59. As such, the ten-day notice requirement mandated by Rule 56 has been met; plaintiff had information sufficient to be put on notice that the underlying motion might be treated as a motion for summary judgment under Rule 12(b).

**I. Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id.* "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## II. Retaliation Claim Under Title VII

To assert a claim of retaliation under Title VII, a plaintiff must allege a *prima facie* case that meets three elements: (1) the employee engaged in an activity protected by Title VII; (2) the

employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria County, Tex. v. EEOC*, 391 F.3d 685, 692. If the Plaintiff is unable to establish a prima facie case, the retaliation claims must be dismissed as a matter of law. *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed.Appx. 437, 440 (5th Cir.2007); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 429 (5th Cir.2000).

### A. Plaintiff's Claims Against Gewin

As mentioned *supra*, Montgomery's amended complaint alleges retaliation against Gewin individually, in addition to Sears.[5] The undersigned again references the Judge James earlier ruling:

> Title VII imposes liability upon "employers" who discriminate. 42 U.S.C. § 2000e-2. "Employer" is defined in Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day...and any agent of such a person..." 42 U.S.C. § 2000e(b). The Fifth Circuit has held that individuals who do not otherwise qualify as "employers" under Title VII cannot be held liable for its violation. *Grant v. Lone Star Co.*, 21 F.3d 649, 651-53 (5th Cir. 1994). Congress included agents in the definition of an employer "simply to incorporate *respondeat superior* liability into Title VII." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 2009) (citing *Grant*, 21 F.3d at 652).

---

[5] In addition to referencing "defendants," *i.e.*, more than one defendant, in her amended complaint, Montgomery makes the following allegations against Gewin:

"Petitioner was a valued employee at Sears for over 30 years working in many capacities over her tenure, never receiving any complaints or disciplinary action until Defendant **GEWIN** was appointed as the store manager." [Emphasis in original] Doc. # 52, Amended Compl., ¶ 3."

"Defendant Gewin continuously disciplined Montgomery after her promotion to Receiving Lead." *Id.* at ¶ 4.

"After this meeting, Gewin's discriminatory treatment increased and Montgomery received negative evaluations on April 21, 2008, June 4, 2008, and July 31, 2008." *Id.* at ¶ 6.

"Petitioner shows that Defendant **GEWIN** has overtly and covertly used race and reprisal to create a hostile work environment against petitioner." [Emphasis in original] *Id.* at ¶ 8.

> Montgomery disagrees with *Grant*, arguing that other circuits allow individual liability under Title VII. However, this Court is bound by Fifth Circuit precedent.[6] Montgomery further asserts that her Complaint does not attempt to hold Gewin liable individually, but included him in the suit to invoke the principle of *respondeat superior*. However, a suit against an employer's agent is actually a suit against the employer under Title VII, and "a party may not maintain a suit aginst both an employer and its agent under Title VII." *Id.*

Doc. # 49, Ruling, June 17, 2010, p. 16.

Accordingly, Judge James granted summary judgment to Gewin on Montgomery's retaliation claim, in addition to her discrimination and harassment claims. *Id.* at pp. 16-17.

In the underlying motion, defendants argue that Montgomery errs in naming Gewin as a defendant; in her opposition, Montgomery is silent on the issue, other than noting that the district court previously dismissed "her claims against Gewin." Doc. # 62-1, p. 4. In any event, it not necessary to reexamine the basis for Gewin's dismissal from the suit. It is recommended that the retaliation claim against defendant Gewin be **DISMISSED**.

### B. Plaintiff's Race Discrimination and Harassment Claims

In her amended complaint, Montgomery also re-asserts all allegations from her original complaint as follows: "The original pleadings as set forth in paragraphs 1-39 [*sic*, as there are 31 paragraphs in the original complaint, not 39], including the unnumbered paragraph beginning 'Wherefore, Petitioner,' are restated and re-averred as if recited full herein." Doc. # 52, ¶ 1.

This reference encompasses the entirety of the original complaint, including the claims of race discrimination and harassment under Title VII. Montgomery also makes specific allegations

---

[6] The Fifth Circuit has affirmed the holding in *Grant* in at least one recent decision. *See Evans v. Greuschow*, 314 Fed.Appx. 716, 718 (5th Cir. 2009).

of racial discrimination and harassment, despite Judge James' earlier dismissal of these claims.[7] To the extent that Montgomery now asserts her retaliation claim in addition to, rather than in lieu of, her race discrimination and harassment claims, it is recommended that the race discrimination and harassment claims be **DISMISSED** pursuant to Judge James' earlier ruling. Doc. # 49.

### C. Protected Activity

An employee is engaged in a protected activity under Title VII when she has either (1) "'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing'" under Title VII. *Haynes v. Pennzoil*, 207 F.3d 296 (5th Cir. 2000) (citing 42 U.S.C. § 2000e-3(a). Here, plaintiff Montgomery claims that she engaged in both of the activities described in *Haynes*.

Montgomery "opposed any practice made an unlawful employment practice" when she attended the meeting with District Manager Wheat on February 19, 2008, "to discuss Anthony Gewin's harassment and mistreatment of her." Doc. # 62-1, p. 6. Harassment is an unlawful employment practice under 42 U.S.C. § 2000e, *et seq.* Montgomery further engaged in a protected activity when she filed her complaint with the EEOC on April 30, 2008. Filing an EEOC charge is clearly a protected activity. *See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995). In both instances, plaintiff has met the first element of her *prima facie* case. The court's

---

[7] Relevant portions of the amended complaint include:
"The continued discipline prompted Petitioner to complain to Ms. Karen Wheat...regarding Mr. Gewin's discriminatory behavior and his harassment of Petitioner in the workplace..." Doc. # 52, Amended Compl., ¶ 5.
" After this meeting, Gewin's discriminatory treatment increased..." *Id.* at ¶ 6.
"Petitioner shows that Defendant Gewin has overtly and covertly used race and reprisal to create a hostile work environment against petitioner." *Id.* at ¶ 8.
"Petitioner shows that as a result of Defendants' discriminatory and retaliatory practices, she suffered physical ailments and emotional distress." *Id.* at ¶ 9.

focus will be upon the remaining elements of plaintiff's *prima facie* case.

### D. Adverse Employment Action

Traditionally, courts defined "adverse employment actions" in the retaliation context as an ultimate employment decision, such as discharge, failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). The anti-retaliation provision of Title VII does not protect an employee from all retaliation, but only from retaliation that produces an injury or harm. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In *Burlington Northern*, the Supreme Court expanded the definition of "adverse employment action," holding that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning that action would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 67-68 (internal quotation marks and citations omitted). The Court noted, however, that trivial harms, such as "petty slights, minor annoyances, and simple lack of good manners," do not deter reasonable victims of discrimination from complaining. *Id.* at 68.

Whether or not a particular disciplinary action would dissuade a reasonable worker in a particular job from making a charge of discrimination requires careful consideration of the totality of the circumstances. *Burlington Northern*, 548 U.S. at 68. If the context shows no adverse impact as a result, and no blame can be attributed to the employee that "might carry a stigma in the workplace," an employment action is not deemed an adverse action. *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 332 (citing *Burlington Northern*, 548 U.S. at 69). In viewing the totality of the circumstances, the relevant questions are whether the alleged adverse

action affected the employee's job title, grade, duties, hours, salary, or benefits, or caused a diminution in prestige or standing among her co-workers. *Id.* (citing *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir. 2008)).

### 1) Plaintiff's Allegations of Retaliation following February 19, 2008 meeting

Plaintiff alleges retaliation in three instances after the meeting with Wheat and five others on February 19, 2008. First, Montgomery claims the PPIs, issued on April 21, June 4, and July 31, 2008, constitute "adverse employment action" in retaliation for her complaints to Wheat at the February meeting. Doc. # 62-1, p. 7. Montgomery contends the PPIs contained "false information" and were "not reviewed with her." *Id.* at p. 6. In the PPIs, Montgomery continues, she was "scrutinized for alleged infractions, which were not her fault." *Id.* at p. 7. Montgomery also claims that she had no verbal warning before being placed on the PPIs. *Id.* at p. 6.

Post-*Burlington Northern* decisions in this Circuit hold that written warnings and reviews are insufficient to constitute "adverse employment actions." The Fifth Circuit has held that unjustified reprimands are considered "trivial" and not materially adverse in the retaliation context. *Grice v. FMC Technologies, Inc.*, 216 Fed.Appx. 401, 407 (5th Cir. 2007). In another case, the Fifth Circuit held that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Dehart v. Baker Hughes Oilfield Operations*, 214 Fed.Appx. 437, 442 (5th Cir. 2007). In *Dehart*, the Court noted the disciplinary action in fact did not deter the plaintiff from engaging in protected activity, as the plaintiff filed a charge of discrimination several weeks after receiving the disciplinary warning. *Id.* As such, the court reasoned the "written warning did not constitute an adverse employment action." *Id.* Such written warnings

and "repeated discipline", without more, are not adverse employment actions. *Bui*, 2009 WL 587084, *13; *see King v. Louisiana*, 294 Fed.Appx. 77, 84 (5th Cir, 2008) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions...as retaliation").

Indeed, this district has held that "written warnings...are simply not actionable as adverse employment actions in the retaliation context." *Bui v. Horseshoe Entertainment*, 07-1712, 2009 WL 587084, at *6 (W.D. La. 3/5/2009), *aff'd*, 09-30234, 2010 WL 2332091 (5th Cir. 6/7/2010) (citing *DeHart*, 214 Fed.Appx. at 442). Likewise, the Fifth Circuit has upheld a district court's finding that a lower-than-expected employment review "would not have dissuaded a reasonable employee from asserting discrimination." *Mitchell v. Snow*, 326 Fed.Appx. 852, 856 (5th Cir. 2009).[8]

Similar to *DeHart*, Montgomery was not dissuaded from making her charge of discrimination, despite the written warning in the form of a PPI. After receiving her first PPI on April 21, 2008, Montgomery initiated her discrimination, harassment and retaliation claims with the EEOC. Thereafter, on May 19, 2008, Montgomery contacted 88SEARS to report that she felt Gewin was further retaliating against her by threatening to refuse her a previously scheduled

---

[8] Other circuits have issued rulings post-*Burlington Northern*, holding that disciplinary actions and performance reviews do not constitute adverse employment actions in the retaliation context. *See Calhoun v. Bush*, 09-5315, 2010 WL 605059, *1 (D.C. Cir. 1/27/2010) (performance evaluation, transfer, and denial of training opportunities were insufficient to be materially adverse); *Byrne v. Telesector Resources Group, Inc.*, 339 Fed.Appx. 13, 17 (2d Cir. 2009) (a lower performance evaluation which still resulted in a promotion and salary raise was insufficient to constitute an adverse employment action); *Mauskopf v. District 20 of New York City Dep't. of Ed.*, 299 Fed.Appx. 100, 101 (2d Cir. 2008) (plaintiff's unsatisfactory rating on her performance review "without any accompanying evidence of negative consequences" did not demonstrate retaliation); *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 929-30 (8th Cir. 2007) (employer's lower performance evaluation and requirement that plaintiff have remedial training in order to help her improve her job performance insufficient to establish a retaliation claim); *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 786-87 (8th Cir. 2007) (series of events addressing plaintiff's work performance, including unfair issuance of written notice for failing to turn in customer postcards and false reports regarding customer complaints, insufficient to establish retaliation claim).

vacation (discussed *infra*). Montgomery's own actions demonstrate that she was not dissuaded from asserting her discrimination claims.

Montgomery's allegations also echo the plaintiff's in *Bui*, wherein the district court held that written warnings, "negative treatment at work," and changes in rules did not constitute adverse employment actions, but rather "fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace," *Bui*, 2009 WL 587084 at *12 (citing *Aryain*, 534 F.3d at 485). Furthermore, Montgomery has not alleged that the PPIs led to any adverse effects on her job title, grade, duties, hours, salary, or benefits. *See Stewart*, 586 F.3d at 332. After Gewin was transferred from the Monroe store, Montgomery remained in the Receiving Lead position and continued to earn her same rate of pay through her retirement. Doc. # 49, p. 4. Montgomery's duties and responsibilities also remained the same through her retirement. Looking at the totality of the circumstances, therefore, Montgomery has not demonstrated that the PPIs were adverse employment actions, issued in retaliation for her earlier complaints. *Burlington Northern*, 548 U.S. at 68.

Next, Montgomery alleges in her opposition that, after reporting "Gewin's harassment, he attempted to demote her and strip her of her supervisory duties by placing her in a lower-ranked position." Doc. # 62-1, p. 7.[9] Montgomery offers no further details as to how this constituted an adverse employment action against her in retaliation for her earlier complaints concerning Gewin. The facts indicate that Gewin offered Montgomery a non-leadership position at the same rate of pay. Doc. # 21-3, pp. 16-17. This occurred sometime in April 2008, after Gewin

---

[9] This is not alleged in the amended complaint, *see* doc. # 52.

promoted Montgomery to Receiving Lead, for which she received an increase in pay. *Id.* After Montgomery declined Gewin's offer, there is no evidence of any "attempted demotions" by Gewin, or any other Sears employee. It is difficult to see how Gewin's action of offering Montgomery a different position, at the same rate of pay, with the ability to refuse such a position, constituted an adverse employment action. Instances more serious than the one Montgomery alleges have failed to satisfy the *Burlington Northern* standard for adverse employment actions. In *Roberts v. Unitrin Specialties Lines Ins. Co.*, the plaintiff alleged that she was stripped "of her job responsibilities and blam[ed]...for male supervisors' mistakes" shortly after she engaged in a protected activity. *Roberts v. Unitrin Speciality Lines Ins. Co.*, 06-0370, 2008 WL 3832223, *8 (N.D. Tex. 8/14/2008). The court classified plaintiff's allegations as "petty slights," "minor annoyances," "lack of good manners," and "snubbing" that would not have dissuaded a reasonable worker from making a charge of discrimination. *Id.* (citing *Burlington Northern*, 548 U.S. at 68).

  Here, Montgomery was never actually demoted; her job responsibilities were not decreased; and, as stated *supra*, she retained her position as Receiving Lead through her retirement, at the same rate of pay. Accordingly, Montgomery has failed to establish that the alleged "attempted demotion" constituted an adverse employment action in retaliation for her earlier complaints of Gewin's conduct.

  Finally, Montgomery contends that Gewin retaliated against her when he told another employee that he (Gewin) "intended to get rid of Ms. Montgomery and the other employees who participated in the February 19, 2008 meeting with Karen Wheat." 62-1, p. 7.[10] Again,

---

[10] This is not alleged in the amended complaint, *see* doc. # 52.

Montgomery offers no evidence that Gewin's statement was accompanied by any negative consequences, such as diminution in prestige or standing among her co-workers. *Stewart*, 586 F.3d at 332. Montgomery has not alleged how Gewin's statement affected her job title, grade, duties, hours ,salary, or benefits. *Id.* Gewin, not Montgomery, was the employee who was eventually transferred. At the time she retired in 2009, Montgomery's hourly wage was higher than when she first began. During the alleged period of retaliation, Montgomery never received a pay cut, demotion or an involuntary change in job title. *See Muttathottil v. Gordon H. Mansfield*, 09-20493, 2010 WL 2465009, *4 (5th Cir. 6/17/2010) (plaintiff did not articulate a *prima facie* case of retaliation as he did not show he suffered an adverse employment action; he suffered no job loss, suspension, salary reduction, or reduction of job duties). As such, Montgomery has failed to demonstrate that she suffered any adverse employment action after attending the February 19, 2008 meeting with Wheat.

### 2) Montgomery's Allegations of Retaliation following her EEOC letter

Plaintiff Montgomery alleges that, as a result of filing her EEOC letter[11] on April 30, 2008, she was subject to further retaliation. Specifically, Montgomery avers that Gewin, being aware of the EEOC claim, told Blann to inform Montgomery that she would not be able to take her vacation the night before it was scheduled to begin. Doc. # 62-2, Montgomery Dep., p. 124:13-16. Montgomery's sole basis for arguing that Gewin knew about her EEOC charge in

---

[11] Employment discrimination plaintiffs must exhaust all administrative remedies before pursuing claims in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). The plaintiff has exhausted administrative remedies after filing a timely charge with the EEOC on April 30, 2008 and receiving a right-to-sue notice on January 1, 2009). *Dao v. Auchen Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996). Filing a timely charge of discrimination with the EEOC is a precondition to filing a civil action in federal court. *Mayes v. Office Depot, Inc.*, 292 F.Supp.2d 878, 887-88 (W.D.La. 2003) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). The charge of discrimination must be filed with the EEOC within 180 days of the alleged discrimination. 42 U.S.C. 2000e-(5)(e)(1).

May of 2008 is her belief that the EEOC served the notice upon Gewin personally within 10 days after Montgomery initiated her complaint.  However, Montgomery admits she does not know exactly when Gewin found out she had filed an EEOC charge.  *Id.* at 124:1-6.  Montgomery also does not offer evidence that Gewin actually instructed Blann to inform Montgomery that she could not take a vacation; Montgomery apparently presumes this to be the case, as Gewin was Blann's immediate supervisor.

In any event, upon being informed that she would not be able to go on vacation, Montgomery asked Blann if Sears would be reimbursing her for the costs she had already incurred for her trip.  *Id.* at 124:22-125:2.  Shortly thereafter, Blann informed Montgomery that she could in fact take her vacation; she began her scheduled trip the next day.  *Id.* at 125:3-13.

Other than her allegations concerning defendants' alleged attempt to prevent her from taking vacation, there is no evidence offered by Montgomery that defendants acted in retaliation after Montgomery filed her EEOC claim on April 30, 2008.  It is difficult to see how being informed that she could not go on vacation, and then being allowed to go, is an adverse employment action in the retaliation context.  Although Blann's actions were likely annoying at the time, and demonstrate a lack of "good manners," there is no indication that plaintiff suffered any injury or harm, as is required by the anti-retaliation provisions of Title VII.  *Burlington Northern*, 548 U.S. at 67.  This is especially true as Montgomery was allowed to go on vacation as originally planned.

Accordingly, Montgomery has failed to establish a *prima facie* case on any of her retaliation claims.  It is therefore recommended that Montgomery's retaliation claim be **DISMISSED**.

### 3) Plaintiff's Motion to Strike

Also at issue and ripe for consideration is a motion to strike, filed by plaintiff Montgomery on September 1, 2009. Doc. # 63. Montgomery moves to strike an exhibit submitted with defendants' motion to dismiss. Doc. # 59-3.

Motions to strike are governed by Rule 12(f), which authorizes a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are disfavored and infrequently granted." *U.S. v. Cushman & Wakefield, Inc.*, 275 F.Supp.2d 763, 767 (N.D.Tex. 2002) (*citing Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962)). As the Fifth Circuit has noted:

> Partly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. * * * It is a drastic remedy to be resorted to only when required for the purpose of justice. * * * The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.

*Augustus*, 306 F.2d at 868 (citing *Brown v. Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953).

"A disputed question of fact cannot be decided on motion to strike . . " and, ". . . when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike." *Augustus*, 306 F.2d at 868. When questions of fact or law are present, the court should ". . . defer action on the motion and leave the sufficiency of the allegations for determination on the merits." *Id*.

In support of their argument that Montgomery suffered no adverse employment action, defendants attach an exhibit purported to be from the "certified EEOC records." Doc. # 59-3.

According to the exhibit, on January 8 ,2009, Montgomery "admitted to the EEOC she hadn't suffered any adverse action since the filing of the charge and she was getting along fine with the store manager (Barbara Kelly Bryant)."[12]  Doc. # 59, p. 8.  In her motion to strike, Montgomery contends that the document does not comply with the Federal Rules of Evidence, because it is not self-authenticating, it does not contain the signature of the office or employee, and it does not have a seal.  Fed.R.Evid. 902.  The document, Montgomery continues, must therefore be stricken from the record.

Even without the exhibit at issue, the undersigned has determined that Montgomery is unable to make a *prima facie* case of discrimination, described *supra*.  Although Montgomery's own admission that she suffered no adverse employment action certainly harms her case, she failed to establish a *prima facie* case for retaliation even before this exhibit was introduced into the record.

Accordingly, plaintiff Montgomery's motion to strike exhibit "B" of the underlying motion  is deemed **MOOT**.

## CONCLUSION

For the above assigned reasons,

**IT IS RECOMMENDED** that defendants' motion to dismiss, construed as a motion for summary judgment (doc. # 59), be **GRANTED** and plaintiff's complaint be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion to strike (doc. # 63) be declared **MOOT**.

---

[12] Ms. Bryant replaced defendant Gewin on August 1, 2008.  Doc. # 59, p. 8.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 13th day of October, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE